## ALAMO TRUST CO. v. CUNNINGHAM. (No. 6030.)

(Court of Civil Appeals of Texas. San Antonio. April 24, 1918. On Motion for Rehearing, May 16, 1918.)

1. VENDOR AND PURCHASER ⟐239(9)—DEEDS —DUTY TO RECORD.

   The vendor is under no duty to record his deed to preserve his vendor's lien thereunder from loss by another's innocent purchase in reliance on a deed forged by the vendee.

2. VENDOR AND PURCHASER ⟐239(9)—FORGERY—EFFECT.

   A forged deed is void and ineffective, and reliance upon it by a purchaser cannot affect the rights of the owner of the property.

3. PLEADING ⟐291(4) — AFFIDAVIT OF FORGERY—BURDEN OF PROOF.

   When a deed was attacked by an affidavit of forgery, the burden then rested on the party relying on the deed to show that it was a genuine instrument.

4. APPEAL AND ERROR ⟐1064(3)—HARMLESS ERROR—INSTRUCTIONS.

   While the statute requires that instructions be in writing, failure to give a written charge is immaterial, where, under the facts, no other verdict could have been properly rendered.

5. APPEAL AND ERROR ⟐742(1) — ASSIGNMENTS OF ERROR—SUFFICIENCY.

   An assignment of error which is neither a proposition of law in itself, nor is followed by a proposition of law, may be disregarded.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Suit by J. L. Cunningham against F. T. Alexander, the Alamo Trust Company, and others. Judgment for plaintiff, and defendant Alamo Trust Company appeals. Affirmed.

Ryan & Matlock, of San Antonio, for appellant. W. H. Penix, of Mineral Wells, for appellee.

FLY, C. J. This suit was instituted by appellee against F. T. Alexander, W. O. Scott, Herman Harms, H. E. Bahr, and appellant to recover 40 acres of land in Cameron county, and in the alternative to recover on seven promissory notes executed by Alexander to W. O. Scott for part of the purchase money of the 40 acres of land. It was alleged that the vendor's lien was retained on the land, and that the notes were transferred by Scott to appellee together with the lien and that payment was guaranteed by Scott. It was alleged that Bahr, Harms, and appellant were setting up some claim to an interest in the land. Appellant, Bahr, and Harms filed a general demurrer, general denial, and specially pleaded that the trust company had loaned Alexander $1,700, and had taken a deed of trust on the 40 acres of land sued for by appellee to secure a note given by Alexander to evidence the loan; that this occurred on September 10, 1912, after a thorough search of the records of Cameron county failed to disclose any claim against said land; that Alexander defaulted in payment of the note, and the land was sold by the trustee on July 1, 1913, and purchased by appellant, and afterwards, on March 7, 1914, appellant, for a valuable consideration, sold said land to Herman Harms, and on March 16, 1914, Harms sold the land to H. E. Bahr; that these different purchases were made in good faith without notice of any adverse claim to the land and for a valuable consideration. It was further alleged that the deed from Scott to Alexander was a full warranty deed, no lien of any kind being reserved therein, and no record was made of any transfer of the notes and lien to appellee from Scott, and appellant Harms and Bahr had no notice of the same. A plea of not guilty was filed as a trial amendment.

In a supplemental petition, which was verified by affidavit, appellee alleged that the deed from Scott to Alexander, which failed to recite a lien on the land, was a forgery, and that the real deed recited a vendor's lien to secure the purchase money, and retained the superior title to Scott in the land. A trial was held by jury, and a verdict instructed for appellee, which was accordingly returned, and judgment was rendered in favor of appellee as against Scott and Alexander in the sum of $5,370.10, and foreclosing the vendor's lien on the land, and that the lien of the deed of trust given by Alexander to appellant be made second to the vendor's lien.

The evidence in this case shows beyond

controversy that the deed recorded in Cameron county, which purported to be a warranty deed without the reservation of a lien or mention of purchase-money notes, was a forgery, and was not executed by W. O. Scott and wife to F. T. Alexander on July 6, 1912, or any other time. The deed made by Scott and wife conveyed 40 acres of land in Cameron county to F. T. Alexander for a nominal cash consideration, and seven promissory notes for $500 each, which were described in the deed, and a vendor's lien retained to secure them. The real deed was not recorded, and in the forged deed there was no mention of notes or lien, but the consideration recited was $6,000 in cash. The real deed was typewritten, a part being on one page, and a part with the signatures of the vendors and the acknowledgments on another page. The evidence showed, without contradiction, that the first page of the real deed had been detached and another and forged page attached in its place. Alexander did not testify. He had disappeared before the trial, and his whereabouts could not be ascertained. He left his wife and family in Texas, where he disappeared. Appellant loaned Alexander $1,700, and to secure the money took a deed of trust on the 40 acres of land; the forged deed on record showing that the title to the land was in Alexander. Appellant bought the land at the trustee's sale and he and his vendees, Harms and Bahr, bought in good faith without knowledge of the forgery.

[1] It did not devolve upon the vendors of the land to record the deed to Alexander, and the failure to record could not have deceived or misled any one, for as long as it was unrecorded the record title to the land was in the vendors, and it became the duty of a person who desired to lend money to a person in possession of the land without a deed to investigate his right to hold possession. The laws of Texas do not require that a vendor should have his deed to his vendee recorded before delivery, and after delivery he could not, if he would, have the deed recorded. It is then in the hands of the vendee, and subject to his control. Most vendees desire the record of their deeds, for it is a protection to them against a subsequent sale by the vendor to an innocent purchaser, without notice. The duty to record the deed rested on Alexander, and not on Scott, and the lattter cannot be held responsible for the failure of Alexander to record the deed executed by Scott and wife.

[2] This case must be considered exactly as though no deed from Scott and wife was upon record, and appellant occupies the same position that it would have occupied had the forged deed not been recorded. That instrument was a nullity, and its record could not and did not give it vitality. The forged deed could not affect the title to the land, and was therefore not entitled to record. The provisions of the statutes as to deeds being void as to subsequent purchasers, without notice, if not recorded, have no application to forged deeds. Reliance on a recorded forged deed may bring loss on him who so relies, but it cannot affect the rights of the owner of the property. A man cannot be deprived of his property by a forged deed, no matter in what good faith the party acted who claims under it. The forged instrument is as absolutely void and ineffective as though it had never existed. Devlin on Real Estate, § 726; Smith v. Markland, 223 Pa. 605, 72 Atl. 1047, 132 Am. St. Rep. 747; Abee v. Bargas, 65 S. W. 489; Loring v. Jackson, 43 Tex. Civ. App. 306, 95 S. W. 19; Green v. Eddins, 167 S. W. 196.

[3] When the deed that was recorded in Cameron county, which purported to be the deed of W. O. Scott and wife, was attacked by an affidavit of forgery, the burden rested upon appellant to show that it was a genuine instrument. Storey v. Flanagan, 57 Tex. 649; Houston Oil Co. v. Kimball, 114 S. W. 662; West v. Houston Oil Co., 56 Tex. Civ. App. 341, 120 S. W. 228; Village Mills v. Houston Oil Co., 186 S. W. 785; Rudolph v. Hively, 188 S. W. 721. In this case no effort seems to have been made to show the genuineness of the deed, and almost the whole brief is directed at the failure of the vendor to have vendee's deed recorded. The failure to record did not rest upon the vendor, but, if it had so rested, that could not possibly make a purchaser under a forged deed an innocent purchaser. The superior title to the land still remained with the vendor in spite of the record of a forged deed. The proof offered by appellee, which he was not compelled to offer, led to the irresistible conclusion that the deed pleaded as a muniment of title by appellant was a forgery of the rankest and crudest character. Of all men in the world, Alexander was most interested in the trial of the cause, for his reputation was at stake; but when the supreme moment came he had disappeared, so that even his wife did not know where he had gone. Appellant did not even offer in evidence the forged deed, upon which it was forced to depend for a recovery.

[4] The court verbally instructed a verdict for appellee, and while the statute requires the law of the case to be charged in writing, under the facts of this case no other verdict could have properly been rendered, and therefore the failure to give a written charge is utterly immaterial. Schwartzlose v. Mehlitz, 81 S. W. 68; Wallace v. Shapard, 42 Tex. Civ. App. 594, 94 S. W. 151. Appellant requested a special instruction, and at the time verbal charge was given made no objection. The first objection urged was two days after the trial in the motion for new trial.

[5] The special charge requested by appellant was an instruction to find for appellant, and was based on a false premise that while the superior title to the land was in appellee, still he held it subject to the lien created by the

deed of trust given by Alexander to appellant. By that charge the nullity of the forged deed was recognized, for if it had been valid appellee would not have held the superior title to the land. The assignment which attempts to assail the action of the court in refusing the special charge is not a proposition of law in itself, nor is it followed by a proposition, and might well have been disregarded. However, it has been considered, and is overruled.

The judgment is affirmed.

### On Motion for Rehearing.

This court stated that appellant bought the land at the trustee's sale, and based the finding on the testimony of Hertzberg, its attorney, and Albers, its vice president and secretary. The latter said:

"When we bought the property in, we either had to carry it on the books as real estate, or carry it in the way of loan. We then made a deed to Mr. Harms, and took his note for $3,000, as a matter of convenience for carrying it on the books as a loan instead of carrying it as real estate."

Again, he swore in regard to the pretended sale to Harms:

"The property still belonged to the Alamo Trust Company."

He also stated that neither Harms nor Bahr had any interest in the land. This court was mistaken in stating that Harms and Bahr bought in good faith. It seems that they did not buy at all. That conclusion is not objected to by appellant, but the conclusion that appellant bought in good faith at trustee's sale is objected to, and we withdraw that finding, which leaves appellant in the attitude of claiming that a deed of trust given by a vendee on land for which the purchase money has not been paid, and on which is held a valid vendor's lien, is superior to that vendor's lien. Of course no authority is or could be offered to sustain such a proposition. To so hold would destroy a line of precedents dating back to the foundation of the Texas Republic.

The motion for rehearing is overruled.